◼ In the Matter of RONALD S. RONSVALLE, Appellant, v GEORGE TOTMAN, as Code Enforcement Officer of the Town of Lansing, Respondent. [757 NYS2d 134] —Kane, J. Appeals (1) from an amended judgment of the Supreme Court (Mulvey, J.), entered December 6, 2001 in Tompkins County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent denying his building permit applications, and (2) from an order of said court, entered April 1, 2002 in Tompkins County, which, upon reargument, adhered to its prior decision.

Petitioner is the owner of a parcel of land located in the Town of Lansing, Tompkins County, which he purchased with the intent to construct a 48-unit apartment complex. At the time that petitioner purchased the property in January 2000, he had been assured by respondent that the property was zoned residential low density (R-1) and allowed multifamily dwellings, such as apartments, condominiums and townhouses. After purchasing the property, and after being reassured that the

townhouse project he was contemplating was permitted in the R-1 zoning district, petitioner commenced the necessary soils investigation and deep hole testing for the construction of the sewage disposal system.

On July 19, 2000, following a Town Board meeting at which area residents voiced their opposition to the proposed development on the ground that it was incompatible with the surrounding single-family residences in the R-1 zoning district, the Town Board adopted a resolution instituting a 60-day moratorium on the issuance of building permits for multiple unit dwellings. The moratorium was to allow the Town Board to consider whether certain provisions of the town's land use ordinance should be amended to prohibit such dwellings. Thereafter, the moratorium was extended until December 31, 2000 in order to provide more time for public comment and for input from the Town Planning Board. A special meeting was held on September 6, 2000, at which public comment was received, and regular public meetings were held on September 20, 2000 and October 18, 2000.

At its November 15, 2000 meeting, the Town Board once again extended the moratorium until February 21, 2001. A public information session was scheduled for December 13, 2000. Meanwhile, the County Health Department completed review of petitioner's sewage system design but, although it found the system to be adequate, it informed petitioner that it could not issue permits until the moratorium was lifted. Finally, a public hearing was held on January 17, 2001, to consider the proposed land use changes. On that date, petitioner attempted to file his building permit applications, but respondent refused to accept them because of the moratorium and the pending public hearing. At its meeting that evening, the Town Board amended the town land use ordinance to restrict the construction of multifamily residences in the R-1 zoning district.

Petitioner then commenced this CPLR article 78 proceeding challenging respondent's denial of his building permit applications. By decision dated November 16, 2001, Supreme Court granted the petition and directed respondent to accept petitioner's permit applications, finding that the moratorium adopted by the Town was null and void because it failed to comply with the requirements of General Municipal Law § 239-m. Subsequently, Supreme Court, sua sponte, reversed itself and, in an amended decision dated December 5, 2001, dismissed the petition. Supreme Court ultimately concluded that, notwithstanding the invalidity of the moratorium, the

January 17, 2001 amendment to the town's zoning ordinance precluded petitioner's project. Petitioner moved for reargument and, although the motion was granted, Supreme Court adhered to its prior decision. Petitioner now appeals from both the amended judgment and the order upon reargument.

Petitioner initially argues that at the time that he submitted his application for the building permits, he was entitled to the permit as a matter of right but for the unlawful moratorium and, thus, he falls within the "special facts" exception to the usual rule which gives effect to an amended ordinance. It is well settled that "when a zoning law has been amended after the submission of an application seeking * * * [a project's] approval, but before a decision is rendered thereon by the reviewing agency, the courts are bound to apply the law as amended unless 'special facts' indicate that the [Town] Board 'acted in bad faith and unduly delayed acting upon [the] application while the zoning law was changed' " (*Matter of Cleary v Bibbo*, 241 AD2d 887, 888 [1997], quoting *Matter of Bibeau v Village Clerk of Vil. of Tuxedo Park*, 145 AD2d 478, 479 [1988]). Upon this record, we cannot agree with petitioner's contention that the "special facts" exception has been established so as to entitle petitioner to the relief requested. The record is devoid of any evidence that the Town Board "deliberately delayed rendering a determination as to [petitioner's] application and that such delay was the product of malice, oppression, manipulation or corruption" (*Matter of Magee v Rocco*, 158 AD2d 53, 60 [1990]; *see also Matter of Cleary v Bibbo, supra* at 888). Specifically, we find no evidence of the extensive delays indicative of bad faith (*see Matter of Pokoik v Silsdorf*, 40 NY2d 769, 772 [1976]), which could deprive the Town from relying on the new law (*see e.g. Matter of Faymor Dev. Co. v Board of Stds. & Appeals of City of N.Y.*, 45 NY2d 560, 566 [1978]). Here, petitioner did not submit his building permit application until after the moratorium was enacted and, in fact, he did not submit said application until January 17, 2001, just hours prior to the time the Town amended its zoning ordinance.

Nor has petitioner demonstrated the degree of detrimental reliance which would serve to support his claim that he has acquired vested rights (*see e.g. Preble Aggregate v Town of Preble*, 263 AD2d 849, 851 [1999], *lv denied* 94 NY2d 760 [2000]), so as to fall within the "special facts" exception. Petitioner claims that he expended $75,000 to purchase the property based on respondent's assurances, both prior to and after the purchase, that it was located in a zoning district which permitted multiple dwellings. However, petitioner did

not apply for the building permits until the day the zoning was amended; no permit was ever issued and no work other than the soils testing for the proposed sewage system had been commenced. Thus, we find that the activities undertaken by petitioner in the furtherance of his project were neither the type that "would inequitably cause a serious hardship or loss" nor were performed "in reliance on a permit legally issued" (*id.* at 851 [citations omitted]). Significantly, as the amendment was adopted merely hours after petitioner submitted his building permit applications, "petitioner has failed to demonstrate that proper action upon the permit would have given [him] time to acquire a vested right" (*Matter of King Rd. Materials v Garafalo,* 173 AD2d 931, 933 [1991]; *see Preble Aggregate v Town of Preble, supra* at 851).

We also find unavailing petitioner's conclusory contention that he had been "stymied" in submitting his application because of the unlawful moratorium. In fact, it is apparent that the Town Board acted responsibly in attempting to ensure that all sides were heard on the subject and, thus, we find that the extensions of the moratorium were not motivated by malice or corruption or bad faith (*compare Matter of Pokoik v Silsdorf, supra* at 769 [village officials arbitrarily refused to act on building permit application and improperly delayed even after court order]; *Matter of Huntington Ready-Mix Concrete v Town of Southampton,* 112 AD2d 161 [1985] [town officials created 17-month delay by telling site plan applicant to wait after election, failing to forward necessary applications to a planning board, raising objections to various aspects of plan, failing to hold public hearing, and general inaction]).

Contrary to petitioner's assertions, Supreme Court was correct in its determination that the validity of the moratorium is not dispositive of which zoning law must now be applied. Regardless of whether the procedure used to enact the moratorium was defective, the court is not obliged to apply a law which has been superseded (*see Matter of Alscot Inv. Corp. v Incorporated Vil. of Rockville Ctr.,* 64 NY2d 921, 922 [1985]; *Matter of Magee v Rocco,* 158 AD2d 53, 61 [1990], *supra*). We see nothing irrational, arbitrary or unlawful in respondent's denial of petitioner's application for building permits and, therefore, it will not be disturbed.

Mercure, J.P., Crew III, Spain and Lahtinen, JJ., concur. Ordered that the amended judgment and order are affirmed, without costs.